Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On 27 August 1995, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On 27 August 1995, an employer-employee relationship existed between the plaintiff and defendant-employer.
3. On 27 August 1995, plaintiff sustained an injury by accident arising out of and in the course of the employment with defendant-employer.
4. Liberty Mutual Ins. Co. was the carrier on the risk for plaintiff's compensable injury.
5. Plaintiff's average weekly wage was $418.01.
6. The parties stipulate into evidence 170 pages of medical records, a Pre-Trial Agreement, a Form 22 Wage Scale Chart with attachments, a document of questions, and a chart of lost time from work with Motorola, accompanied by plaintiff's pay stubs.
7. The parties stipulate to the following:
 a. Plaintiff began working for defendant-employer in November of 1993, and last worked for defendant-employer on 3 January 1996. Plaintiff began working for Motorola on 10 January 1996.
 b. Plaintiff is claiming temporary total disability compensation benefits from 1 September 1995 to 29 December 1995, and for lost time subsequent to 3 January 1996.
8. The issues before the Deputy Commissioner were:
 a. Whether plaintiff's injuries were caused by the accident occurring on 27 August 1995; and,
 b. What compensation, if any, is plaintiff entitled to under the Act?
 *************
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 27 August 1995, plaintiff, twenty-four years of age, suffered an injury by accident arising out of and in the course of her employment when, she lifted a gate and suddenly felt sharp pain in her left shoulder, with complaints of pain radiating into her lower back and left leg.
2. Plaintiff reported the accident to defendant-employer and first received medical care on 28 August 1995 at defendant-employer's central facility. Plaintiff presented to Dr. Douglas Campbell and was diagnosed with a musculoskeletal sprain of the left deltoid and left paralumbar area. She was treated conservatively and given restrictions on lifting and movement.
3. Plaintiff was regularly evaluated by Dr. Campbell following her 27 August 1995 injury. On 12 September 1995, Dr. Campbell referred plaintiff to Reability, a Durham based physical therapy facility. On 26 September 1995, plaintiff's work restrictions were tightened. Plaintiff progressed well with physical therapy initially, but on 16 October 1995, plaintiff expressed anger and frustration over her perception that the physical therapy was not improving her condition. On 18 October 1995, plaintiff was referred to Dr. Robert T. Wycker, a Raleigh orthopaedist.
4. On 23 October 1995, Dr. Wycker conducted a physical examination of plaintiff and took x-rays of her lumbothoracic spine. Dr. Wycker diagnosed plaintiff with a muscular strain and noted that plaintiff's x-ray failed to demonstrate any obvious bony abnormality. Dr. Wycker recommended that plaintiff continue with physical therapy and work within the restrictions imposed by Dr. Campbell.
5. On 20 November 1995, plaintiff presented on follow-up to Dr. Wycker. He noted that a recent MRI of plaintiff's lumbothoracic spine revealed no spinal cord compression or other abnormalities. He opined that plaintiff's condition had stabilized, with no evidence of permanent functional impairment. Plaintiff was released by Dr. Wycker to return to work at full duty. However, plaintiff protested being returned to work at full duty. A second appointment with Dr. Wycker was arranged for 18 December 1995. Plaintiff missed this reevaluation appointment.
6. On 20 December 1995, plaintiff presented to Dr. Campbell. He noted that plaintiff had been placed on light duty until 25 December 1995 by her personal family physician, Dr. A. Csorba. Plaintiff sought treatment from Dr. Csorba after Dr. Wycker released her to return to work at full duty. Dr. Campbell opined that plaintiff was suffering from a recent recurrence of a lower back muscular sprain. Dr. Campbell reminded plaintiff to attend her appointment with Dr. Wycker, scheduled for 21 December 1995.
7. On 21 December 1995, plaintiff again presented to Dr. Wycker. Dr. Wycker noted that there were no significant objective findings to explain her pain and that she displayed no neurological or radicular symptoms. He again released plaintiff to return to work at full duty beginning 26 December 1995, and he suggested that defendant-employer might consider gradually phasing plaintiff back into regular duty. Plaintiff was returned to work with no restrictions by Drs. Csorba, Campbell, and Wycker commencing 26 December 1995. Plaintiff reached maximum medical improvement no later than 26 December 1995.
8. On 26 December 1995, plaintiff's manager intended to follow Dr. Wycker's suggestion to allow plaintiff to work four hours light duty and four hours regular duty. However, plaintiff failed to show up for work on 26 December 1995.
9. On 27 December 1995, plaintiff worked from 3:42 p.m. to 5:10 p.m. She left without medical authorization after reporting back pain to her manager.
10. Plaintiff was absent without medical authorization from 28 December 1995 up to and including 2 January 1996. However, on 2 January 1996, plaintiff did present to Dr. Campbell. He stated that plaintiff's condition on this date was normal and reiterated that plaintiff's MRI and lumbosacral x-rays showed no evidence of abnormality.
11. On 3 January 1996, plaintiff voluntarily terminated her employment with defendant-employer. She began employment with another employer on 10 January 1996.
12. Plaintiff has failed to prove that any disability claimed after 25 December 1995 was causally related to her 27 August 1995 injury.
13. Plaintiff has no permanent partial disability as a result of her 27 August 1995 injury.
 *************
The foregoing stipulations and findings of fact engender the following additional:
 CONCLUSIONS OF LAW
1. On 27 August 1995, plaintiff sustained an injury by accident arising out of and in the course of the employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to disability compensation at the rate of $278.85 per week from 1 September 1995 up to and including 25 December 1995. N.C. Gen. Stat. §§ 97-29, 97-30. Defendants are entitled to a credit for the wages earned by plaintiff after 27 August 1995 against the compensation due. N.C. Gen. Stat. § 97-42.
3. Defendants are obligated to provide plaintiff with medical treatment which is reasonably required, as a result of her 27 August 1995 injury, to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation at the rate of $278.85 per week from 1 September 1995 up to and including 25 December 1995, subject to the attorney's fee approved in paragraph 3 below. Defendants shall receive a credit for the wages earned by plaintiff during this period against the compensation due.
2. Defendants shall pay all medical expenses reasonably incurred as a result of her 27 August 1995 injury and which tend to effect a cure, give relief or lessen plaintiff's disability, after bills for her treatment have been submitted and approved according to established Industrial Commission procedure.
3. An attorney's fee of twenty-five percent of the compensation awarded in paragraph 1 is approved for plaintiff's counsel and shall be deducted from the compensation due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
 S/ ________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ DIANNE C. SELLERS COMMISSIONER